**BRYAN CAVE LLP**
Courtney J. Peterson
1290 Avenue of the Americas
New York, NY 10104
Tel: (212) 541-2000
Fax: (212) 541-4630
Courtney.Peterson@bryancave.com
*Attorneys for Plaintiff RMT, Inc.*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RMT, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GCUBE INSURANCE SERVICES, INC. AND CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SPECIFICALLY SYNDICATE NOS. 510, 2987, 2623, 623, 2121, 5000, 3000, 1084, 1183, 958, 609, 5151, 2003, 1200, 4020, AND 33, SUBSCRIBING TO CERTIFICATE NO. SO1003268,<br><br>　　　　Defendants. | Civil Action No. 13-cv-06436 (RBS) (JS)<br><br>**FIRST AMENDED COMPLAINT<br>AND JURY DEMAND** |

RMT, Inc. ("RMT"), by and through its attorneys, Bryan Cave LLP, as and for its First Amended Complaint against GCube Insurance Services, Inc. ("GCube") and Certain Underwriters at Lloyd's, London, Specifically Syndicate Nos. 510, 2987, 2623, 623, 2121, 5000, 3000, 1084, 1183, 958, 609, 5151, 2003, 1200, 4020, and 33, Subscribing to Certificate No. SO1003268 ("Underwriters") (GCube and Underwriters, collectively "Defendants"), states and alleges as follows:

## INTRODUCTION

1. This is a diversity action for payment under an insurance policy and bad faith processing of an insurance claim. RMT is an insured on a policy covering property damage incurred during the erection of a solar project in Pilesgrove, New Jersey. RMT provided notice of a claim under the policy in October of 2011. Over two years later, Defendants have not accepted or denied the claim. GCube, the managing agent authorized to process RMT's claim, has admitted it did nothing to investigate or resolve the claim for over a year after notice was provided. During this time, and without a reservation of rights letter, GCube promised to send a representative to a mediation involving damages arising out of the claim and then, without notice to RMT, did not attend. Then, after GCube sent a reservation of rights letter (more than a year after the Notice of Property Loss was filed), GCube again ignored repeated inquiries on the status of its claim. When GCube did finally respond over eighteen months after notice was provided, GCube continued to act with intentional and reckless disregard of its obligations to investigate and pay the claim. While promising to move forward "at full speed," GCube instead spent another five months making burdensome information requests that were later withdrawn, representing to RMT that it had the information it required to negotiate a resolution and then later demanding additional information (some of which had already been provided) and finally representing that it was soon ready to begin negotiating a resolution with RMT but then filed a lawsuit in New York seeking to bar the claim. Defendants never resolved the claim. RMT now requests that judgment be entered against Defendants on its claim and for the additional damages it has incurred.

**THE PARTIES**

2.       RMT is a Wisconsin corporation with its principal place of business in Madison, Wisconsin.

3.       Defendants Lloyd's Syndicate Nos. 510, 2987, 2623, 623, 2121, 5000, 3000, 1084, 1183, 958, 609, 5151, 2003, 1200, 4020, and 33 are all diverse to RMT because each member is an alien entity and no entity has its principal place of business in Wisconsin. Upon information and belief: syndicate no. 510 has one member, R.J. Kiln & Company Limited, a company registered in England and Wales with its principal place of business in the United Kingdom; syndicate 2987 has one member, Brit Syndicates Limited, a company registered in England and Wales with its principal place of business in the United Kingdom; syndicate no. 2623 has one member; Beazley Furlonge Limited, a company registered in England and Wales with its principal place of business in the United Kingdom; syndicate no. 623 has one member, Beazley Furlonge Limited, a company registered in England and Wales with its principal place of business in the United Kingdom; syndicate no. 2121 has one member, Argenta Holdings plc, a public limited company registered in England and Wales with its principal place of business in the United Kingdom; syndicate no. 5000 has one member, Travelers Indemnity Company, a company registered in England and Wales with its principal place of business in the United Kingdom; syndicate no. 3000 has one member, the Markel Corporation, a company registered in England and Wales with its principal place of business in the United Kingdom; syndicate no. 1084 has one member, The Hanover Insurance Group, a company registered in England and Wales with its principal place of business in the United Kingdom; syndicate no. 1183 has one member, the Validus Group, a company registered in England and Wales with its principal place of business in the United Kingdom; syndicate no. 958 has one member, the Canopius Group, a

HRODEN\1664319.1\C079066\0349029

company registered in England and Wales with its principal place of business in the United Kingdom; syndicate no. 609 has one member, Atrium Underwriters Limited, a limited company registered in England and Wales with its principal place of business in the United Kingdom; syndicate no. 5151 has one member, Montpelier Re Holdings Ltd., a limited company registered in England and Wales with its principal place of business in the United Kingdom; syndicate no. 2003 has one member, Catlin Syndicate Limited, a company registered in England and Wales with its principal place of business in the United Kingdom; syndicate no. 1200 has one member, Argo Group, a company registered in England and Wales with its principal place of business in the United Kingdom; syndicate no. 4020 has one member, Group Ark Insurance Holdings Limited, a company registered in Bermuda with its principal place of business in the United Kingdom; syndicate no. 33 has one member, Hiscox Group, a company registered in England and Wales with its principal place of business in the United Kingdom.

4. GCube is a California corporation with its principal place of business in California. GCube is a Managing General Agent for the Underwriters authorized to handle and settle claims on the policy on behalf of the Underwriters.

**JURISDICTION AND VENUE**

5. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity and, upon information and belief, the amount in controversy exceeds $75,000 for each defendant member. RMT filed a proof of loss for $5,717,994. Upon information and belief, each defendant syndicate member has liability for more than 1.3% of the loss which is more than $75,000.

HRODEN\1664319.1\C079066\0349029

6.      This Court has personal jurisdiction over Defendants.  The project covered by the Policy is located in New Jersey and the Underwriters agreed in the Policy to submit to the jurisdiction of a court of competent jurisdiction within the United States.

7.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the property insured is located in New Jersey and the damages incurred on the property arose of out an occurrence in in New Jersey.

## GENERAL ALLEGATIONS

8.      Underwriters issued a "SolarPro" policy (the "Policy") to Pilesgrove Solar, LLC for its Pilesgrove Solar LLC project (the "Project") located at 388 Mannington Yorketown Road, Pilesgrove, New Jersey.  The Policy covered physical loss and damages to property at the Project during its erection. RMT is an insured under the Policy.  A true and correct copy of the Policy is attached hereto as Exhibit A.

9.      The Policy defined Property to include "all…transmission and distribution lines …directly associated with the operation of the insured solar project" and also included "all material…which [is] to be used for or incorporated in the fabrication, erection, commissioning, maintenance and operation of the Project."

10.     The Policy indemnified the insured for Loss or Damage to Property and Business Interruption arising from or attributable to Insured Events.  Insured Events was defined to include (i) the physical loss of or physical damage to insured property; and (ii) the electrical or mechanical breakdown, failure or malfunction of the insured property, subject to its terms and exclusions.

11.     RMT contracted with Pilesgrove Solar LLC to construct the Project.  The construction of the Project included the direct bury of DC cables.

5

12. The DC cables were Property as that term is defined in the Policy.

13. After the cables were placed, a subcontractor of RMT, CSI, unintentionally damaged the cables by nicking and cutting the cables in the course of its further work at the Project.

14. As a result of these nicks and cuts, the DC cables suffered physical damage and electrical breakdowns and had to be replaced.

15. RMT incurred significant losses in replacing the damaged cables totaling $5,717,994.

16. The losses incurred by RMT are covered under the Policy.

17. RMT provided notice of the claim in October of 2011, and filed a Property Loss Notice on December 22, 2011.  Defendants have never paid or denied the claim.

18. Instead, Defendants recklessly and intentionally delayed processing the claim in a manner in bad faith and in violation of the fiduciary obligations owed to RMT as an insured under the Policy and the fair claims processing requirements under New Jersey law.

**Defendants' Bad Faith Processing of RMT's Claim**

19. On October 14, 2011, RMT provided notice of loss to GCube.

20. In October 2011, RMT's general counsel spoke with GCube's claim representative, Mr. Cioni.  Mr. Cioni stated that he would let RMT know what information GCube needed to review the claim and how GCube wanted it presented.  In the first of many delays, Mr. Cioni did not again contact RMT until December 16, 2011.

21. On December 16, 2011, Mr. Cioni sent RMT a Property Loss Notice and requested that RMT fill out the form and return it so that GCube could "begin to investigate the claim."  RMT returned a completed Property Loss Notice on December 22, 2011.

22. In February of 2012, RMT provided additional documentation of its loss and on June 1, 2012, RMT provided its final loss schedules with extensive documentation. The schedules and documenting information were contained on a DVD.

23. Mr. Cioni ignored the claim. On September 13, 2012, three months after the DVD had been provided, Mr. Cioni told RMT that he was "finally sitting down to tackle [the claim]" but found that he could not access the information on the DVD. A replacement DVD was provided on September 17, 2012.

24. Upon information and belief, following the receipt of the replacement DVD, Mr. Cioni again did nothing to begin to review the claim. Repeated efforts to meet with Mr. Cioni were ignored. Calls and emails to Mr. Cioni were not returned.

25. In addition, as Mr. Cioni knew, RMT had commenced a lawsuit against its subcontractor that damaged the DC cables. The lawsuit was scheduled for trial on March 4, 2013 and a mediation was scheduled for January 8, 2012. RMT invited GCube to the mediation. Mr. Cioni responded stating, "please provide details, including location and time. We'll respond with the name(s) that would appear on behalf of our Underwriters." RMT provided Mr. Cioni with the details requested. However, GCube did not appear at the mediation or tell RMT that it would not appear.

26. Instead, Mr. Cioni continued to ignore requests from RMT on the status of its claim. It was not until May of 2013, almost 18 months after RMT provided its Property Loss Notice and almost a year after RMT provided its final loss schedules that GCube reinitiated contact on the claim. On that date, a new claims agent, James Papazis, contacted RMT to state that he had been asked to assist on the review. When he was asked about the progress of the review, Mr. Papazis acknowledged that nothing had been done in the past year.

27.     Mr. Papazis promised a quick review but GCube instead continued to stall and delay resolution of the claim.  Mr. Papazis initially made burdensome and unreasonable requests for information that were later withdrawn.  After additional information requested by Mr. Papazis was provided on June 6, 2013, Mr. Papazis stated that GCube had the information needed for its claims investigation and was moving forward at full speed.

28.     On July 19, 2013, Mr. Papazis informed RMT's broker that an expert had been retained.  Mr. Papazis stated that the expert "believes there is enough provided to compile a rough estimate in which we can use as a starting point for discussion and negotiations."  On July 26, 2013, Mr. Papazis represented that "[T]his matter is moving full speed ahead.  We are pressing the experts to get together something we can all use as a starting point for our communication."

29.     On August 8, 2013, Mr. Papazis wrote that he "had the report from our experts" and he was "in the process of putting it all together in a review so we can discuss and have a starting point."  Mr. Papazis stated: "Please know this is a good step towards bringing this matter to a resolution."

30.     Relying on these representations and with the assumption that GCube was finally acting in good faith, RMT continued to wait for GCube to respond to its claim.  However, GCube did not respond in good faith and did not resolve the claim.

31.     Instead, on September 16, 2013, Mr. Papazis wrote in an email that his expert had determined the number of foundation posts installed at the Project on "snapshot" dates.  The number of foundation posts installed was no surprise.  The information was clearly and repeatedly set forth in the documents provided on June 6, 2013 and could have been ascertained

in a matter of hours.  Mr. Papazis did not identify the relevance of this observation to GCube's claim investigation and provided no additional information on the claims resolution.

32.	A call to discuss Mr. Papazis' email was held on October 4, 2013.  On the call, Mr. Papazis claimed to yet again need more information.  On October 7, 2013, Mr. Papazis sent an email request for more information (much of which had been previously provided) and sought RMT's "position" on certain aspects of its claim.  The email warned that "this list [of requested information] is not intended to be exclusive but used as guidance for furthering [a] discussion."

33.	It appeared that the parties were back at square one after almost two years.  Efforts to escalate the issue with GCube's senior claims management failed.  GCube's senior management said that GCube had the information needed to make its decision.  However, GCube refused to escalate the matter to its senior claims management.  Instead, it simply offered to set a further call with Mr. Papazis and GCube's legal counsel.

34.	With no further substantive communication and no response to RMT's claim, GCube then filed its lawsuit in New York on October 22, 2013, asking that the court declare the claim to be barred.

### FIRST CLAIM FOR RELIEF
(Breach of Insurance Contract Against Underwriters)

35.	RMT repeats each and every one of the allegations made in paragraphs 1 through 34 above as if fully set forth herein.

36.	RMT is an insured under the Policy issued by Underwriters.

37.	The Policy covered the losses incurred by RMT as a result of damages to the DC cables caused by its subcontractor.

38.	RMT made a claim under the Policy for $5,717,994.

9

39. GCube is an agent of Underwriters with authority to process the claim under the Policy.

40. Defendants have not paid the claim and have not denied the claim.

41. Defendants failure to pay the claim and to process the claim in a timely manner is a breach of the Policy and of the implied covenants of good faith and fair dealing set forth in that Policy.

42. RMT has been damaged as a result of Defendants' breach of the Policy in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**(Estoppel Against Underwriters)**

43. RMT repeats each and every one of the allegations made in paragraphs 1 through 42 above as if fully set forth herein.

44. GCube is an agent of Underwriters with authority to process the claim under the Policy.

45. RMT provided notice of a claim on October 14, 2011 and provided a Property Loss Notice on December 22, 2011.

46. Underwriters had a duty to investigate RMT's claim within a reasonable period of time. Underwriters further had a duty of fair and full disclosure to RMT that required, among other actions, that Underwriters communicate to RMT in a timely fashion the results of any investigation.

47. Underwriters unreasonably delayed in disclaiming coverage and in giving notice of the possibility of such a disclaimer.

a. GCube did not provide a reservation of rights letter until December 26, 2012, which was more than a year following RMT's Property Loss Notice and after RMT had commenced a lawsuit against the subcontractor that caused the damages and scheduled a mediation to resolve the claims.

b. GCube did not begin any substantive review of the claim for more than 17 months after it was filed. GCube then misrepresented the status and nature of its review. GCube represented it was moving forward at full speed and had the information needed to begin negotiations to resolve the claim. GCube never reported the results of its investigation to RMT and never denied the claim. Instead, GCube again claimed to need additional information (much of which had already been provided) and then filed a lawsuit in New York seeking a declaration that the claim was barred by a contractual limitation.

48. RMT expected that Defendants would act in accordance with representations made by GCube. RMT relied upon GCube's representations and actions to its detriment. As a result, Underwriters should be estopped from denying coverage or alternatively estopped from raising defenses to coverage under the Policy.

**THIRD CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty by Defendants)**

49. RMT repeats each and every one of the allegations made in paragraphs 1 through 48 above as if fully set forth herein.

50. Underwriters had a duty to RMT to investigate RMT's claim within a reasonable period of time. Underwriters further had a duty of fair and full disclosure to RMT that required, among other actions, that Underwriters communicate to RMT in a timely fashion the results of any investigation.

11

51.     GCube is an agent of Underwriters with authority to process the claim under the Policy.

52.     Defendants breached their duty to RMT by, among other actions, failing to investigate RMT's claims within a reasonable period of time, agreeing to provide a representative at a mediation and then without notice to RMT failing to do so, failing to communicate to RMT in a timely fashion the results of its investigation and misrepresenting their intentions to negotiate a resolution with RMT, their need for additional information, and the status of their investigation of the claim.

53.     RMT has been damaged by Defendants breach of fiduciary duty in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Bad Faith Delay and Denial of Payment by Defendants)

54.     RMT repeats each and every one of the allegations made in paragraphs 1 through 53 above as if fully set forth herein.

55.     GCube is an agent of Underwriters with authority to process the claim under the Policy.

56.     RMT provided notice of a claim on October 14, 2011 and provided a Property Loss Notice on December 11, 2011.

57.     The Policy covered RMT's claim.

58.     Defendants never denied the claim.  Defendants instead acted intentionally and with reckless indifference in regards to the claim.

59.     RMT has been damaged by Defendants actions in an amount to be proven at trial.

WHEREFORE, RMT respectfully requests that this Court enter an order as follows:

A.Entering judgment in favor of RMT and against Defendants on each of the claims set forth in the Complaint;

B.Awarding RMT compensatory damages that include the amount of its claim and other damages incurred by RMT in an amount to be determined at trial;

C.Awarding RMT exemplary damages as a result of Defendants' egregious conduct in their claims processing and resolution of RMT's claim;

D.Awarding RMT pre and post-judgment interest, costs, and reasonable attorneys' fees and costs; and

E.For such other and further relief as the Court deems equitable and just and proper.

Dated: November 18, 2013Respectfully submitted,

By:/s/ Courtney J. Peterson
Courtney J. Peterson
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, New York 10104
Tel:  (212) 541-3187
Fax: (212) 541-1487
courtney.peterson@bryancave.com

*Attorneys for Plaintiff RMT, Inc.*

HRODEN\1664319.1\C079066\0349029